*CABE5LL, J.
The appellees brought an action of debt against Dupuy as administrator of Binford, on a single bill, and voluntarily accepted from him a confession of judgment when assets. This was an admission on the part of the plaintiffs that there were not at that time any assets in the hands of the administrator, liable to the payment of their debt. It was not denied by the counsel for the ap-pellees that this is the just construction of such a judgment in the estimation of a court of law; nor can I perceive any difference in this respect between courts of law and courts of equity. The judgment must mean the same thing in both courts. It is true that courts of equity may exercise an ulterior jurisdiction unknown to the courts of law, by relieving the plaintiff, in a proper case, from the effects of his admission. But even courts of equity will not suffer that to be again brought into litigation, which has been once solemnly settled between the parties by their admissions on record, unless there be some good reason assigned for so doing. I know of no sufficient reason, but the allegation and proof of some fraud, misrepresentation or mistake. Nothing of the • kind is alleged or proved in this case. There is nothing but the mere allegation of that, the contrary of which had been previously admitted on record. On this ground, I am of opinion that the decree is wholly erroneous.
But even if it were competent to the ap-pellees to go behind the judgment at law, and to demand an account of the assets in the same manner as if that judgment had never been rendered, I should be of opinion that the administrator would be entitled, as against the appellees, to a credit for the full amount of the two single bills indorsed by him and negotiated for the benefit of Binford. Bathurst v. De la Zouch, 2 Dick. 460. As the indorser and surety of Bin-ford, he had a right to pay off these bills. He did pay them, and by doing so, equity will regard him as standing in the shoes of *the bank to which they were paid; as a specialty creditor, and as such entitled to retain as against the appellees, who, so far as regards the assets in dispute, are only specialty creditors. For the dignity of their debt was not changed, as to these assets, by their judgment; a judgment when assets giving no lien on previous assets. The decree is therefore erroneous in this respect also.
The decree should be reversed and the bill dismissed.
BROOKE}, J-, concurred.
TUCKER, P.
Though this case has been argued with great ability and at much length, it appears to me to lie within a very narrow compass. Inverting the order which has been pursued in the argument, I shall address myself to the following questions:
1. Could the administrator Dupuy, on the day when the judgment was rendered upon his confession, have successfully pleaded a retainer against the plaintiffs’ demand?
2. If he could not, ought he to have defeated the demand by falsely alleging that he had no assets, when he then had more than sufficient to pay the debt?
3. If not, are the appellants entitled to relief in equity?
As to the first question ; without examining or controverting the case in 2 Dickens 460, where a retainer of an equitable demand was in equity allowed, it may, I *570 think, safely be affirmed that in June 1821 when the judgment was rendered, the. administrator could not have pleaded a good plea of retainer at law on account of his liability for the bank debt. That debt had been passed to the bank by assignment or indorsement, no matter which. It was on that day, and for twelve months after, the property of the bank. Non constat that Dupuy ever could have been made personally responsible *for the amount. Considering the instruments as negotiable notes, there is no evidence that they were properly dealt with, so as to make him liable as indorser; and considering them as bonds, it is impossible to say that Dupuy the assignor might not, by some act of the bank, have been discharged of his liability. But be this as it may, in June 1821, he was not the creditor of Bin-ford. The bank was the creditor, and had he become insolvent before payment, he never would have been the creditor. The utmost that can be said is that he was responsible for the debt. Now, the forms of pleading shew that he who pleads a retainer at law must plead it as an actual, subsisting, legal demand. See the form, 3 Chitiy’s Plead. (Philadelphia edi. of 1828) p. 946. It may indeed be payable in futuro, but it must be debitum in prsesenti. Reduce the plea of retainer to form, and this is obvious. Again, he who is merely responsible cannot retain for his responsibility against, an actual creditor, for perhaps he may never be charged, or if charged may never be able to make payment, 'and so may never be a creditor of the estate. There is no precedent, that I can find, of such a plea of retainer. To arrest the payment of an unquestionable debt because of a possible responsibility, would be inconsistent with all the analogies of the law. Thus, even a simple contract creditor cannot be impeded in his recovery by a contingent security, such as a bond of indemnity, if the contingency has not taken place. Toller 282. Moreover, if Dupuy had actually paid the debt to the bank at the time of the confession of judgment, though be would thereby have made himself a creditor and would have had a right in equity to stand in the shoes of the bank as a bond creditor, yet at law he would have been only a simple contract creditor, and could not retain against a specialty. If he had been a surety in the bond, instead of indorser, the result would have been the same. Por, upon paying off the debt, he *would have been, at law, only a simple contract creditor, and indeed, according to english law, he would have been no creditor at all, since the obligation became, at law, his own debt by the co-obligor’s death. I am persuaded, then, that no good plea of retainer could have been framed on the facts in this case.
Secondly, as Dupuy had no right to retain, ought he to have defeated the demand by falsely alleging he had fully administered,* when he had ample assets in his pocket? I think not. Such conduct violated the trust reposed in him, his oath of office, and his official bond. He binc^s himself truly to administer the assets according to law, and though he occupies the position of antagonist to the creditor so far as the demand is in question, yet he is the fiduciary of the creditor as regards the assets. It is a breach of trust, and a fraud upon him, to allege that he has no assets, when he is full handed. The creditor does not and often cannot know whether the allegation is true. He has a right to expect it to be true, and though, beyond doubt, at law he is estopped, by taking a judgment when assets, from going behind the judgment, yet in equity there is no such estoppel. It is competent for him, before that tribunal, to allege that the fiduciary has falsified his oath — has been guilty of a fraudulent concealment of the state of the assets, and has, by a false plea, which it was not in his power to controvert, barred him at law by an odious estoppel. This brings me to enquire,
Thirdly, whether the appellees were entitled to relief? Let us see what the bill states. It alleges that *at the time of the judgment confessed, the administrator had assets, but the plaintiffs were unable and are still unable to prove the fact without the aid of a court of equity. That they were not able in June 1821, may be fairly inferred from the account not having been audited and settled till 1825. Were they able to do so when they brought this suit? By no means; for the judgment having been when assets, they could not have gone behind that judgment. Equity only could enable them to do so. ’ Equity only could give them the account which would shew the state of the assets. They have therefore well said, not that they cannot prove assets without an appeal to the conscience of the administrator, but that they cannot do so without the aid of equity. They have not then proved themselves out of court, by producing the settled account of 1825.
It is said, however, that as the judgment estopped them, equity ought not to relieve them against the sureties. To this it may be well replied, that equity should not respect this estoppel in the case of a trustee who has violated his oath of office, has misapplied the funds of the estate, has misled the creditor by a false allegation which it was not in his power to controvert, and has applied to his own relief the assets to which the appellees had a legal title; that estoppels are odious in equity, and never avail unless insisted- on; that here, all the defendants, sureties as well as principal, confess the matters set forth in the bill, and that this brings it to the case of an estoppel against estoppel, by which the matter is set at large. If the creditor, by his judgment, admitted there *571 were no assets, the defendants, by confessing that there were assets, admit that he was mistaken in his admission. The es-toppel, therefore, cannot avail.
Does the fact that some of the defendants are sureties make a difference? I think not. The charge is of a devastavit in not paying the plaintiffs’ debt, and in '"falsely alleging that there were no means of payment. This charge is admitted by the pleadings; yet it is still contended that the sureties, having been discharged at law, cannot be charged in equity. But how discharged at law? By the falsehood and fraud of that man for whose fidelity and bona fides they were responsible. They never can avail themselves of this discharge in equity.
As to the error supposed to exist in the form of the decree, I think it is without foundation. It is the usual form, I believe, in cases in equity in which the creditor seeks to charge the sureties with a devas-tavit, but from the nature of his case is unable to issue his fieri facias at law. It postpones any resort to the sureties until, by an execution returned unproductive, the devastavit is fixed beyond contradiction.
I am of opinion to affirm the decree.
Decree reversed and bill dismissed.

Note by the president. The entry in this case is only of a short minute in the borough court — " Judgment confessed when assets.” The order, drawn out in form from this minute, must have been that “ the defendant pleaded plene administravitand then, that “ the plaintiff, not being advised but that the said plea is good, prays judgment of his debt &c. of the goods &c. which shall hereafter &c. Therefore it is considered that he recover” accordingly. See Lilly’s Entries 505. — Note in Original Edition.